**DEITRICK v. AMES et al.**
**No. 4258.**

District Court, D. Massachusetts.
July 19, 1938.

A. J. Aldridge, of Boston, Mass., for plaintiff.

Joseph H. Cinamon, of Boston, Mass., for defendant, Thomas E. Greaney.

David Stoneman, of Boston, Mass., pro se.

Emmanuel Kurland, of Boston, Mass., for defendants, Samuel Fleischer and Forrester A. Clark.

Choate, Hall & Stewart and Brooks Potter, all of Boston, Mass., for defendant, William A. Russell.

Charles B. Rugg and Carl J. Gilbert, both of Boston, Mass., for defendant, David Stoneman.

Tyler, Eames, Wright & Reynolds and John P. Wright, all of Boston, Mass., for defendant, Oliver Ames.

George B. Rawlings, of Boston, Mass., for defendant, Oliver Ames.

BREWSTER, District Judge.

This suit in equity was brought by the Receiver of the Boston-Continental National Bank (hereinafter referred to

as "the Bank"), to enforce the alleged liability of the defendants as directors of the Bank. The case was referred to a master and is now before the court on plaintiff's exceptions to the master's report and on the merits. All exceptions are overruled and the report confirmed. I adopt the report as the statement of facts required by Equity Rule 70½, 28 U.S.C.A. following section 723. In order, however, to consider the questions of law raised by the parties, it will be necessary to set forth the salient findings of the master.

The controversy originally involved two transactions, but as the case was presented at the hearing the only issue related to one transaction, referred to as the "Balter Loan". Respecting this loan, the facts are that the defendant Stoneman, an attorney at law who was then acting as attorney for the Bank, was requested by the president of the Bank to take over a note, for $20,499.05 of one Joseph Balter, held by the Bank, which was inadequately secured. This loan had been criticised by the Bank examiner. The president at the time promised to take this note off Stoneman's hands at any time he should request it. Stoneman did not directly acquire the note and substitute his own, as originally contemplated, but caused the note with accompanying collateral to be taken over by his brokers, Stoneman assuming full responsibility for the obligation which he later discharged after the value of the collateral had shrunk from $16,000 to $1,100. Subsequently Stoneman and the other defendants became directors and acted as members of the executive committee. Stoneman was then indebted to the Bank, and he assented to a proposal, made by the other defendants, that his indebtedness be reduced. He said that, since he had taken the Balter Loan out of the Bank purely as a matter of accommodation upon the president's agreement to relieve him of this obligation at any time, the Bank should carry out its promises and credit him with the amount of the Balter Loan. At that time the Bank had loaned Balter on other notes over $30,000 which the master finds were wholly unsecured. As a result of conferences, and after the defendants Ames and Clark had been assured that the transaction was legal, it was arranged that Balter should give the Bank his note for $24,931.87, which obligation together with the unsecured indebtedness, was to be secured by an assignment of his (Balter's) equity in 6,100 shares of stock of the Bank, the value of which equity was found to be $60,000. This assignment provided that the proceeds of the security should first be applied to the satisfaction of the new note of $24,931.87. Balter received no part of the new loan. With his consent, the full amount was credited upon Stoneman's indebtedness to the Bank. As a part of the same transaction, Stoneman agreed to waive, or release the Bank from, all obligation upon his claim for compensation for legal services rendered the Bank, which services the master finds were fairly worth $25,000. The transaction was ratified by the Board of Directors, Stoneman not voting, and the master has found that the acts of Stoneman with reference to the Balter Loan were taken by him as a debtor to the Bank rather than as a director.

The plaintiff has abandoned his claim, based on the common law of negligence, and presses only the charge of violating sections of the National Banking Act (12 U.S.C.A. §§ 83 and 93). Section 83 forbids a national bank from making any loan on the security of shares of its own capital stock "unless such security * * * shall be necessary to prevent loss upon a debt previously contracted in good faith."

Section 93 provides that if the directors knowingly violate or permit the violation of any of the provisions of the Act, the franchise of the bank shall be forfeited. This section further provides "and in cases of such violation, every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which the association, its shareholders, or any other person, shall have sustained in consequence of such violation."

It is contended by the defendants that the loan to Balter was not within the inhibitions of the statute, and that if it was, plaintiff could not prevail inasmuch as it clearly appears from the master's report that the Bank, its shareholders, or any other person, suffered no damages in consequence of the transaction.

The directors are not chargeable with any violation of section 83 by taking as security shares of the bank, if such security was necessary to prevent loss on a debt previously contracted in good faith. In such a case the statute, by its terms,

permits a loan to be made upon its own shares. That was what was done in the case at bar. The Bank held unsecured indebtedness of Balter, whose financial standing was doubtful, or "shaky", as the master finds. By making the loan on the security of its own stock, the Bank obtained collateral, not only for the new loan but also what was then properly deemed to be adequate security for indebtedness previously contracted in good faith. If the directors regarded such new collateral as necessary to prevent loss on the old indebtedness, they were warranted in so doing. The terms of the statute cannot be strained to include within its condemnation offences other than those which are clearly described and provided for. Atherton v. Anderson, 6 Cir., 86 F.2d 518.

While I am inclined to agree that the plain language of the statute does not admit of any other view, nevertheless if it should be held that the loan was prohibited by section 83, the defendants cannot be held personally liable. Section 93, imposing individual liability, requires first that the Act shall be "knowingly" violated; and second, that damages shall have been "sustained in consequence of such violation." It is settled that in suits to enforce statutory liability of directors of national banks, it is necessary to prove that the violation was, in effect, intentional. Yates v. Jones National Bank, 206 U.S. 158, 27 S.Ct. 638, 51 L.Ed. 1002; Jones National Bank v. Yates, 240 U.S. 541, 36 S.Ct. 429, 60 L.Ed. 788; Atherton v. Anderson, supra.

The facts, as found by the master, clearly demonstrate that the defendants Ames and Clark can not be charged with an intentional violation of the statute. They sought advice and were told by Mr. Stoneman, who was acting as legal adviser for the directors, that the Balter Loan was lawful.

Whether the defendant Stoneman can escape the charge, or whether the finding that he acted as a debtor of the Bank and not as a director would enable him to avoid personal liability, are questions not now necessary to decide because, on the master's report, it is not possible to find that the Bank or its shareholders sustained any damage in consequence of the transaction. On the contrary, the Bank benefited. Not only did it liquidate an obligation of

$25,000 when it credited the proceeds of the Balter Loan, but it also had Balter's obligation for that amount which, at the time, was amply secured. Whether or not the subsequent decline in the value of the stock should be treated as a consequence of the transaction, it is not important to determine since the Bank stood to lose nothing if the note and collateral proved worthless.

It follows, therefore, that the plaintiff has failed to charge any of the defendants with statutory liability, and the bill must be dismissed.